In this case, the district court looked through Dr. Berger's expert report, didn't find a sense amplifier, and said the report is bad, and she then excluded the entire infringement case because of that. But didn't Dr. Berger admit that he didn't consider each limitation of each claim with respect to the accused device? No, just the opposite. Dr. Berger said, and he testified at trial, and it's also at the deposition, that what he meant by MAP was that he didn't repeat an explanation for an element if he had previously discussed it. So Dr. Berger specifically stated at trial, and this is at A1472 and 1473, that he specifically considered each limitation in his report. So is it your position that if an expert's report references a claim limitation once, anywhere in the report, that that alleviates the obligation of an expert to map out the claims against the accused product? Yes, and I think they're using MAP in terms of claim charts, and the district court in this case said that MEDTRONIC conceded that there is no need to submit claim charts. You can do it in words, you don't have to use claim charts. This is in the district court's opinion at page 22, so in the appendix it would be A122, that there is no need to continually submit claim charts and continually repeat an explanation. And where he had his explanation for the sense amplifier, it was in two full pages. He specifically said that the sense amplifier is disclosed, and this is at A2243-44, and then he followed that by citing to five MEDTRONIC reference manuals, two MEDTRONIC clinician manuals, two MEDTRONIC product specifications, and two MEDTRONIC device requirement specifications. So, there wasn't any question that he had disclosed it in there, and there was never an assertion by MEDTRONIC that a sense amplifier wasn't in there. It's got to be in every one of these devices. So, you're putting, I mean, the difficulty here is you've got a district court, and particularly in this instance, it's a well-experienced district court judge, and the obligation you place on the district court judge, where you can have a voluminous record and an expert report, and it seems to be your position, so tell me if I'm wrong, that if somewhere in there you refer to a claim limitation, then the district court has to sift out and kind of do her own homework in terms of putting all of the pieces of the puzzle together. And here's the problem in this case that led to that situation. MEDTRONIC, after taking Dr. Berger's deposition, said he did not map. I won't even define what map meant. He just said, he did not map, he did not map, he did not map. Well, implicit in there was he didn't cover every limitation. MEDTRONIC would never come out and say, this is the limitation that was missing. The reason they didn't do that was because there was no limitation that was missing. To this day, MEDTRONIC has never said that there's any missing limitation. And when she decided she wasn't going to rule against us on the basis that Dr. Berger said he didn't map, she was going to look at the report itself, because if you want to figure out whether a report is deficient, the way to do it is to look at the report. Where do you think the burden of proof rests in a DJ action such as this? Well, I think you have different factors here that go into that. In this case, they clearly had the burden of proof, and this is for a number of reasons. First of all, it was all disclosed and it was clear. The purpose of an expert report is to give the other side notice. There was no assertion of prejudice or surprise. They had the burden of proof because why? Okay, I got into that. I'm on infringement. Okay. First of all, this was a license agreement. They filed a DJ action. So, they were the plaintiff. We did not counterclaim for infringement. Second of all, we gave them an interrogatory. We said, in your complaint, you asserted that we don't have claim coverage. Which elements are missing? They came back and identified primarily the six elements. They never said anything about a sentence amplifier. So, that just really wasn't an issue in the case. But that doesn't necessarily suggest that the burden of proof should be shifted, does it? In the normal patent infringement context, whether the infringement issue is provoked by a patent infringement complaint or whether it is an issue raised in a declaratory judgment action by an accused party or a licensee, the burden normally would be expected to be on the patentee to prove infringement by a preponderance. So, first of all, there was no infringement. We couldn't assert infringement against Medtronic because they were a non-breaching licensee. And this was actually in the pretrial order. The pretrial order said, and this is, I think, A2303, that Medtronic cannot be an infringer. So, it wasn't a question of infringement. The district court said, well, you have to prove infringement because you asserted infringement. But we didn't assert infringement. There was no counterclaim for infringement. So, is it your view as a matter of law that in every DJ action where there is no counterclaim, the burden of proof rests with the person pursuing the DJ as opposed to the patentee? I would say generally that's true. But I don't think this case really depends upon that. Okay. So, assuming we reject that proposition and you're not pressing that proposition, you're saying even in normal DJ action with no counterclaim, the patentee would have the burden, what makes this case different? Well, you had a license where the two parties could decide who was going to have to prove it. The parties decided that it was going to be Medtronic who had the burden to do it. Where is that in the agreement? Well, the agreement says that Medtronic has to bring suits. Well, they bring a DJ. So, I thought, you know, they brought a DJ. Right. The first answer to your question is, of course, we prove it. The second answer to your question, before you get to that, is all the claims of the 119 patent. So, your first point is that you don't need us to reach that because you think even if you have the burden, you should prevail. Oh, yes. Okay, but let's assume we reject that. Okay. Then your case comes down to the burden. So, is it your position that as a matter of law, every time someone presents a DJ and there's no counterclaim, then the burden rests with the person proceeding? No, I think you have to look at the facts of each case. Okay, and what makes this different than the other case? Well, first of all, there's no counterclaim for infringement. Right, that's what I said. There's no federal circuit authority where they've ever held that. The district court cited cases where there was only a counterclaim for infringement. Do you have any cases on your side to suggest in the absence of a counterclaim? No, we don't think that's dispositive because, number one, when you ask them interrogatory and they come back and say, these are the claim elements of the issue, that narrows the issues. And narrows the issue, how does that affect the burden shifting? Well, that you don't have to prove since they amplify it. Because if you don't have to prove infringement, you don't have to prove all the elements. And we didn't have to prove infringement. We could even charge infringement. They said, we don't infringe because we don't have these elements. We asked them, what elements are these? And they did not identify the sense amplifier. At that point, the sense amplifier was out of the case. But that's predicated on your view that the burden is theirs. No, no, no. No, I mean, and we cite the connection case from the district court involving exactly the same thing where this district court said a few months later, they asked what elements are an issue. You only said these elements. That means they don't have to prove anything with respect to these other elements. So the sense amplifier would have been out of the case. And if they were a counterclaim, you would concede that would be different? Oh, yes, of course. Of course. But here, that was out of the case with the interrogatory. One of the Supreme Court's tests for determining who bears the burden of proof in a declaratory judgment action is to ask, who would win if no evidence were submitted? In this case, who would win if no evidence is submitted? We wouldn't. Because we narrowed the issue with the sense amplifier. And as I say, and I don't want to continually repeat it, but it was so clear, and there's no assertion by Medtronic that the sense amplifier wasn't in the report, that the sense amplifier wasn't discussed at trial by Dr. Berger. And Medtronic's witness, Karen Fleckner, even said exactly that with the sense amplifier. And this is at A1720. Question. Okay. Would it also be fair to say that CRT pacing, the Medtronic CRT devices have sensing amplifiers? Answer, yes. Okay, the sensing amplifiers just generally refers to what we were mentioning before with respect to the right ventricle. You have an electrode that senses a signal, and then the signal is amplified. Yes. And then it goes to wherever it's going, the CPU or whatever. Yes. And then this is on 1721. And this is pretty standard semi. This is pretty standard pacemaker technology. Yes. There wasn't any question at all about the sense amplifier. The problem was that Medtronic never identified any missing element. And then the district court went off on her own to look for it, and without any guidance from Medtronic, she arrived at the sense amplifier, and the sense amplifier was clearly disclosed. I'm not sure my question or the answer to it is helpful in this case, but I don't think you answered my question. My question was, who would win in this case if there was no evidence? If there was no evidence? No evidence by any party. If there were no – oh, then who would – This is one of the Supreme Court's tests as to who bears the burden. It would be – the answer, presumptively, would be that the party that bears the burden if no evidence is submitted would lose. Right. Well, first of all, of course, and I'm just repeating myself, but there was plenty of evidence here. But second of all, it was Medtronic who was requesting relief. And they were requesting relief on the basis of the interrogatory answer that we didn't have the six claim terms – that the six claim terms were uncovered. And there was no dispute that Dr. Berger's report was completely adequate with respect to those six claim terms, so we would win. But your answer to Judge Lynn, if there were no evidence presented, your answer is that you would still win. In other words, they would not prevail if no evidence was put forward. Is that your position? Yes. They came in to say that once the case was narrowed down by the interrogatory, that it's the six claim terms. And the six claim terms, there was plenty of evidence on that. So they would lose in their action for a judgment that they don't infringe, that they don't owe a royalty. Right. So that would mean that if there was no evidence, that the royalty obligation would be sustained, in effect. Well, we were not asking for anything. I realize that. Yeah, this is what they had to do under the agreement. If they wanted to justify their discontinuation of royalties, they had to get a district court to agree with them that either the patent was not infringed, no claim coverage, or invalid, or some other reason. And so if they didn't get the relief in that action, then they just don't have any justification for still withholding the royalty. But as a practical matter, in a case where there's no agreement, okay, somebody brings, the alleged infringer brings a DJ action. He puts on insufficient evidence. So as Judge Lynn pointed out, there's a finding of no non-infringement. The patentee had the opportunity to present a counterclaim and did not. So then can the patentee ever go in and sue for damages in that scenario? I'm sorry. You're saying that there's a… Somebody files a DJ, alleged infringer, no counterclaim. Right. And the alleged infringer loses on the DJ. In other words, they do not get a finding of no infringement. Is the patentee then able, in a subsequent case, to pursue an issue of infringement and damages? Probably. It's not a permissive counterclaim. It's probably the counterclaim for patent infringement is a mandatory counterclaim. Right. So if they didn't bring it, they probably would lose it. So that they could not subsequently bring an action for damages. But that's only because of Rule 13 making it a mandatory counterclaim. So… Mr. Neustadt, you wanted to save some time. Yes. A rebuttal. Mr. Luke, is it? Luke. Luke. Luke, you're on. Luke, sorry. Good morning. May it please the Court. I'd like to start with Judge Lynn's question because I believe the answer to that question is found directly in the litigation polling agreement. And I think it gets right to the heart of this burden-shifting argument from the beginning. And that 8044 of the appendix… If I could just take a moment to… I'll let the Court get there. And then just take a moment to lay out what the architecture of this litigation polling agreement was. In this agreement, what the parties decided to do was to put off the end dispute until all of the patents were at or near the end of their term, or some other litigation between the parties was resolved. And Medtronic, under paragraph 7A in the litigation polling agreement, was to notify Boston Scientific, here it was Guidance, and the Mirowski Family Ventures of their products, supply them with adequate position manuals. And the purpose for that was so that Boston Scientific and Mirowski Family Ventures could look at those manuals and decide which products it would accuse of infringement. And in paragraph 7C that ends on appendix A8045 that answers Judge Lynn's question, in the last three sentences, any Medtronic product not included in the accused resynchronization products shall be waived, and any disputed royalties paid into the Medtronic-Mirowski escrow account, on account thereof and interest thereon, shall be released to Medtronic. And what the agreement does is it places the obligation to accuse products in that paragraph squarely on Guidance and the Mirowski Family Ventures. And it's only after that that Medtronic even has the ability to bring the declaratory judgment action. But let's say you lose on the, well, if you put on, you bring a DJ, but then you put on no evidence. You didn't put on your expert here, let's assume hypothetically. What happens if you don't provide, and the district court finds you didn't put on sufficient evidence, no matter who has the burden, you lose? What's the result of that? I don't think we do lose if we put on no evidence and they don't put on any evidence. What happens then? The royalties are returned to Medtronic because any claim for royalties is waived under the agreement. So is your view that in a normal case, in the absence of an agreement, the DJ, the burden of proof lies with the person bringing the DJ, but this case is an exception to that rule because of the substance of the agreement, or is it your view that you wouldn't have the burden in any event? No, our view is that the burden is on the patent deed to prove infringement at all times in accordance with this court's decision in tech licensing in which the court, not a DJ case, but which the court said very explicitly, the burden remains on the proponent and the party with the risk of losing the proposition. There's also a District of Maryland case that I think is exactly, well, I think this case is even clearer than the District of Maryland case in which a licensee took a position almost identical to that of the defendant here, and in that case, the district court analyzed it and said, if you are the accuser of infringement, the burden remains on you regardless of whether you're making a counterclaim or not. And I would also point out that factually in this case, at Appendix A8055, which is Boston Scientific and Murawski's answer to this case, in Paragraph 7, 8055, Your Honor, Paragraph 7 states, Murawski Family Ventures admits that it alleges that certain of Medtronic's implantable cardiac stimulation devices infringe at least one of claims, and then goes on to lay out a set of claims. And it's important to note here that during the litigation, the claims that they relied upon changed. So these were the claims, you know, we challenged that we owed any royalties. We always disputed that we owed royalties. But we did that based on a letter from Mr. Newstead in which he reserved the right to change the claims that they relied on. And after the litigation was going for a while, Murawski Family Ventures withdrew a number of claims and asserted a new set of claims against us that we then had to turn and respond to as well. And so at all times, it was not only, in our view, their obligation to prove each and every element of the claims. They had the initial obligation to tell us which 30 of the set of 350 claims in these two patents they were going to proceed on. And they were limited in the agreement to just 30. Mr. Lewick, in the absence of a license where a party is either threatened with infringement or otherwise feels that there's a case or controversy, would file a declaratory judgment action. That would provoke a mandatory counterclaim of infringement. And I think everybody would agree that the burden there would lie with the patentee in the normal sense with respect to infringement. But here we have a license agreement. And following Metamune, the licensee is taking advantage of the opportunity that case provided to in effect say, I want to park my license agreement. I don't want to cancel it. I don't want to breach it. I want to park the agreement. But I want to contest the question of whether these products that I'm selling incur a royalty or not. Under those circumstances, it seems a little odd for the licensee to basically walk into court and say, you know, I really don't think that I have a burden to pay royalties under this license agreement. And to put the burden on the plaintiff, the patentee rather, to then come in with evidence to prove infringement or else lose the ability to collect those royalties. Isn't there something sort of implicit in the retention of the license agreement that claims cover the product with the exception of the elements that the licensee contends are not infringed? No, I don't think so, Your Honor. And even though it's just a district court decision, I think the reasoning of that decision in the Metamune case at 271 F sub 2nd, which is cited in our brief, addresses that question head on. Because the patentee in that case made the argument that it would be unfair in exactly these circumstances to put that burden on the patentee. And what the court said there is that, first of all, the burden should remain on the party asserting the affirmative. And I'll get to why I think that's the proper policy here in a moment. But then went on to say, just as here, it's not unfair because it was an arm's-length transaction with adequate consideration. The parties were represented by sophisticated counsel. If someone wanted to negotiate for burden shifting, that could have been done. I'll set aside the question of whether parties can, by private agreement, change the burden of proof. I don't know the answer to that question, but I will say it wasn't done here. And the district court's reasoning in Metamune, it seems to me, makes perfect sense. And it squares up exactly, I'll go back to the tech licensing case, I don't think there could be a more clear pronouncement than the one that this court made, where it said, and the district court relied on this statement in her order at paragraph 35, neither the patentee's burden to prove infringement, nor the accused infringer's burden to prove invalidity, both ultimate burdens of persuasion, ever shifts to the other party. The risk of decisional uncertainty stays on the proponent of the proposition. And if you think about the position that Medtronic was in in this license agreement, we're talking about literally 300, I don't remember the total number, but it's in excess of 350, I believe,  We had some very fundamental defenses, not only on infringement, but on invalidity. We never believed we owed the royalties, but to put the burden on us to disprove, for example, But you have a license under all 350 claims, right? Well, we did. What we really had was a tolling of the litigation. We had a license, a very broad license agreement that started out with Lilly many years before that had a huge cross-license of patents between the two companies. And what this dispute ended up being was a tolling of the dispute between the two parties, in which Medtronic bargained for no willfulness by agreeing to the litigation tolling agreement, and the Mirowski Family Ventures got an agreed-upon royalty right. And so what the parties agreed to was that at the beginning of that tolling agreement, at the expiration of what was called the DJ suspension period, it's referred to in paragraph 7, and defined in the agreement, then the parties could decide whether they were going to fight or not fight over whether royalties were accrued, and if so, what products and what claims that would be. I mean, the existence of a license agreement really foreclosed the possibility of a counterclaim for infringement, correct? No, I don't think it did, Your Honor. I would say it did. I think a counterclaim could absolutely have been brought here where there's no breach claimed. Well, isn't that what the parties agreed, that the Mirowski Family Ventures would identify instances of infringement and then Medtronic would be obligated to initiate a declaratory judgment suit if it wanted to contest that, and that didn't set up the scenario where there would be a mandatory counterclaim. In fact, I think it precluded that. Well, I would simply go back to the agreement and say this is not an agreement where Medtronic was giving the money to Mirowski Family Ventures or Boston Scientific as they were going. The accrued royalties, so to speak, were put aside in a set-aside account, and the obligation to come forward on what products fell within those claims fell squarely on Mirowski. They had the obligation under paragraph 7c to notify Medtronic if they believed there was infringement and of what claims they believed were infringed. Do you want to address your cross-appeal? No, we'll stand on the briefs on the cross-appeal, but I would like to address the Court's ruling on the evidentiary issue with the expert report just briefly. Can I ask a little about the cross-appeal? Sure. I have just one question to clarify because I was a little confused by the briefing in terms of what your alternative claim construction is. And given your critique of the District Court's claim construction, it struck me that you would just remove the caveat for treatment of congestive heart failure. But it seemed to me you were coming up with a kind of different incarnation. Would there be anything wrong? Is it not your position that you should just chop off the limitation that the District Court put in for treatment of congestive heart failure, or are you proposing something else? No, I think essentially our point of view is that she went too far when she limited it to congestive heart failure because the specification of the patent talks about... So is your answer to me that, yes, the claim construction essentially we're advocating is just crop off that limitation? I think you could express it that way, yes, Your Honor. And our reasoning is based upon the fact that the patent specification itself says, just as one example at column four, lines 20 through to 27, to increase hemodynamic efficiency of a patient experiencing congestive heart failure or weak contractions, and there is prior art in a number of places, SILVA, and tires as part of them, that falls, we believe, squarely within that. Well, you're not asking us to find the patents are invalid. You're simply asking for a remand based on a revised claim construction, correct? That's correct. On the issue of the Daubert exclusion, the District Court found that Dr. Berger's report failed to demonstrate that he considered each limitation in comparison to each of the nine accused bodies. Well, you know, this case struck me as kind of odd, and it's different from most we see. Isn't the fact that you used Daubert to strike the testimony, is that really a question of foundation or reliability? Isn't it more of sort of weight, a question of weight, in terms of his expert opinion? No, I think that... Is it really a Daubert issue? Well, it's a Daubert and a Rule 702, subparagraph two and three issue. The expert is obligated to use reliable methods. And in his testimony, he testified that he knew, in his deposition testimony that we cited to the court, he knew what the correct methodology was, thought he applied it, and did not. And I think the District Court's problem here is that this report covered 29 claims and nine accused products. And if you just make a simple matrix of how many places did the claims and the products match up, that's 261 before we get to any elements. And it wasn't a question of just not finding a sense amplifier. Sense amplifier was only an element in nine of the claims that they proceeded to trial on, nine of the 27. And when she went to that paragraph of her report, and if you look at what's in her memorandum, she could not find anywhere in the places that Dr. Berger cited to her a sense amplifier that related to the claims. And that's just one example. And as the court pointed out, it was not incumbent on the District Court to go through the report and try to pull everything out. And I would also point out that she did not make her ruling on Daubert at the beginning of the case. She waited until she had all of the evidence before her on friendly direct examination, and then went back and re-reviewed that report and found it haunting. And my last point, because I see I'm out of time, it's quite different than her prior ruling in the Konexa case, where she specifically found at page 748 that the plaintiff's expert in that case had made a claim element by element comparison and found each element exactly in the accused products. That was never done here. Thank you, Mr. Lewick. Mr. Neustadt has a little time left. And since Mr. Lewick went over, we'll give you three minutes. Thank you, Your Honor. The cases about the District Court's error, the purpose of an expert report is to give notice to the other side. There was no question at all that they were not surprised or prejudiced. There also was no question at all that Dr. Berger, at trial, went through element by element for every single claim, and the claims weren't all that different. They were pretty simple. In fact, in our brief, in the first opening brief, we showed how the claim, you know, just says sense, pace, sense, pace, and for that it's pretty simple. And he looked through his report and had all that. The report was 80 pages. He then discussed all of those limitations in the beginning of the report in 16 pages. Medtronic doesn't even dispute that. So it's clear that it's in his report and there's no question that he decided he discussed all of this at trial. And perhaps even the most glaring thing is the District Court is going to hold that because supposedly he didn't disclose the sense amplifier, that she is not going to let us prove infringement for claims that do not even recite the sense amplifier. All the claims of the 119 patent do not recite a sense amplifier. 1 out of 112 paragraph social limitation, Dr. Berger explained the sense amplifier for that. 897 patent, 15 of the 22 claims did not recite a sense amplifier. So the District Court not only got it completely wrong, but even if she got it right, claims did recite a sense amplifier. So how could she rule against us with respect to those claims? Now as to what Mr. Lewick was saying about infringement, in A2303, and this is the proposed pre-trial order and this government proceedings, it says the term infringement is used in the litigation polling agreement to indicate claim coverage. Since Medtronic is a licensee, it cannot be an infringer. That meant we couldn't counterclaim. That meant that when we gave them notice of infringement, we weren't asserting infringement. We were asserting claim coverage because this is the pre-trial order that Medtronic agreed to. So we end up losing the case because the District Court makes a horrible error because she doesn't see that the sense amplifier is there in the report. And the cause of the error is really Medtronic because all they did was say, you did not map, you did not map, you did not map, implying that there was a missing limitation. But they would never identify any missing limitation, and to this day they don't say there's any missing limitation in either his report or in his testimony. So it's a horrible error by the District Court, and to say that we can't get any relief from this horrible error because Medtronic just said he did not map, which really didn't mean anything, is just a grave injustice for us.